IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CHARLES DONALD MEEKS and VIVIAN )
JUNE MEEKS, ADMINISTRATORS OF THE )
ESTATE OF JAMES RICHARD ANDERSON, )
DECEASED, )
                                )
           Plaintiff, )    Case No. 7:16-cv-104
                                )
v. )
                                )
C.H. ROBINSON WORLDWIDE, INC., *et al.*, )
                                )
          Defendant. )

## **MEMORANDUM OPINION**

On October 16, 2017, the court held a hearing to address the parties' petition to approve a settlement pursuant to Virginia's wrongful death statute, Virginia Code § 8.01-55. At the conclusion of the hearing, the court determined that the amount of the settlement was fair and just and has since entered an order approving the settlement amount of $ 450,000. At that hearing and at a telephonic hearing held the next day, the court heard evidence as to the beneficiaries' damages under Virginia Code § 8.01-52. The court also considers the testimony offered at a hearing in a prior case against different defendants, in which this court was asked to apportion the proceeds among the same four beneficiaries.[1] *See Meeks v. Emiabata*, No. 7:14-cv-534 (W.D. Va.). The court must now determine how to distribute and apportion the proceeds of this settlement among the four statutory beneficiaries. *See* Va. Code § 8.01-55 (directing that if the court approves the compromise and the parties in interest do not agree as to a distribution, "the court shall direct such distribution as a jury might direct under § 8.01-52 as to damages awarded by them").

---

[1] No beneficiary has objected to the court's consideration of the prior testimony.

The decedent, James Richard ("Ricky") Anderson, was a tractor-trailer driver and was killed in a motor vehicle accident on April 1, 2014, when he was 34 years old. He had never been married, he had no children, and both of his parents had already died at the time of his death. Accordingly, under Virginia Code § 8.01-53(ii), any wrongful death damages are to be awarded to his "brothers and sisters . . . and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent."[2]

As discussed in the court's distribution opinion in *Meeks v. Emiabata*, which reasoning the court incorporates fully, the four statutory beneficiaries are Ricky's two siblings—Raymond Anderson ("Ramey") and Katie Anderson—and his aunt and uncle, with whom he resided—Charles Donald Meeks ("Don") and Vivian June Meeks ("June"). *Meeks v. Emiabata*, No. 7:14-cv-534, 2015 WL 6760491 (Nov. 5, 2015). The court remains convinced, for the same reasons set forth in its prior opinion, that Ramey and Katie suffered a small amount of damages for the loss of their brother, particularly relative to June and Don, who have suffered greatly as a result of Ricky's death.[3] In short, Katie and Ramey were not at all close to Ricky at the time of his

---

[2] Although Ricky had a will that named only Don and June as beneficiaries, the will does not control the distribution of damages in a wrongful death action, which "should be awarded individually and separately to the statutory beneficiaries according to their respective damages." *Carroll v. Snead*, 179 S.E.2d 620 (Va. 1971); *Wilson v. Whittaker*, 154 S.E.2d 124, 127 (Va. 1967) (nothing that, in a wrongful death action, "the personal representative of the deceased sues primarily as trustee for certain statutory beneficiaries and not for the general benefit of the decedent's estate").

[3] Katie was given notice of the hearing, waived her appearance, and agreed that the court could consider her testimony from the hearing in the prior case. (Dkt. No. 83.) Ramey was given notice of the October 16, 2017 hearing, but did not appear. (Dkt. No. 82, 85.) After the start of that hearing, Ramey left a voice-mail message for plaintiffs' counsel saying that he was on his way, and he later reported that he had car trouble and was unable to get to the hearing. The court accommodated his request to testify, however, and held a telephonic hearing the following day, on October 17, 2017, at which time the court took sworn testimony from Ramey. In addition to reiterating some of his testimony from the earlier case and emphasizing that he loved Ricky, Ramey also offered a number of criticisms of Don. In particular, he testified that he believed Don was not a very caring or good person, offering as an example that Don did not visit his own mother that much. He also testified that Don had taken advantage of Ricky financially, and that Don should not have been appointed executor of Ricky's will. As the court told Ramey during that hearing, the issue of the will is not before this court, and the court is concerned only with the

death and had not been for some time.  Don and June, by contrast, had a close and loving relationship with Ricky, and they both have been affected deeply by his death.  They continue to experience daily grief at the loss of Ricky, and they keenly feel his absence in their lives.  Their compensable damages are significant.

Accordingly, for the reasons set forth above and explained more fully in its prior opinion, the court will award Katie and Ramey a small amount of damages, in the amount of $7,000 each.  The remainder of the amount available to the beneficiaries will be divided equally between Don and June.

The court also has considered the request for attorneys' fees and expenses, which consist of a requested fee of $170,000 (which is approximately thirty-eight percent of the total settlement amount), and slightly less than $40,000 in expenses.  This case involved significant discovery, including a number of depositions for fact witnesses and experts that required travel, and there was an all day mediation in Roanoke.  There were multiple experts, and briefing and a hearing on motions to exclude experts.  The parties also briefed and argued a summary judgment motion.  In short, it was a vigorously contested case.   The court also notes that this case was consolidated with two other related cases for pre-trial purposes, and it appears that there were cost savings from counsel for all plaintiffs working together and sharing expenses when appropriate.  In light of that background, the court concludes that the expenses were reasonably incurred and that the fees sought are reasonable.

---

compensable damages that each beneficiary suffered upon Ricky's death.  Moreover, the court finds some of his testimony not credible, to the extent he suggests that Don and Ricky were not close and did not have a loving relationship.  As to Ramey's opinion of Don, the question before the court is not whether any beneficiary is a good or bad person, but whether and to what extent he or she suffered damages as a result of Ricky's death.  Thus, nothing in Ramey's testimony changes the court's prior opinion about the proper distribution of the settlement proceeds.

An appropriate order setting forth the distribution of the settlement shall issue.

Entered: November 3, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge